## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SUSAN WILTON M.D.**<br>1710 Valley Greene Rd.<br>Paoli, PA 19301, | NO. _____ |
| *Plaintiff,* | CIVIL ACTION |
| vs. | JURY TRIAL DEMANDED |
| **OPHTHALMOLOGY PHYSICIANS AND SURGEONS, PC.**<br>331 North York Rd.,<br>Hatboro, PA 19040 | |
| -and- | |
| **FRANCIS J CLARK M.D.**<br>331 North York Rd.,<br>Hatboro, PA 19040 | |
| -and- | |
| **WADE, GOLDSTEIN, LANDAU ABRUZZO PC.**<br>61 Cassat Avenue,<br>Berwyn, PA 19312 | |
| *Defendants.* | |

## **COMPLAINT**

Plaintiff, by and through undersigned counsel, hereby files the following Complaint against each of the Defendants.

1

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action for wage violations pursuant to the Fair Labor Standards Act ("FLSA"), the Pennsylvania Wage Collection and Payment Law ("WPCL"), breach of contract and other applicable law against Defendants Ophthalmology Physicians and Surgeons PC., (hereinafter referred to as 'Defendant Ophthalmology Physicians' or 'Ophthalmology Physicians') and Francis J Clark M.D., (hereinafter referred to as 'Defendant Clark' or 'Clark') in his individual capacity.

2.     Plaintiff further brings an action of Breach of Confidentiality and Conflict of Interest against the Wade Goldstein Landau Abruzzo PC., (Hereinafter referred to as Defendant Wade Goldstein) a law firm which has, and continues, to represent Plaintiff but which has turned on her, in the most outrageous manner, breaching its fiduciary duty and causing Plaintiff significant emotional distress.

## JURISDICTION and VENUE

3.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

4.     The Court may properly maintain personal jurisdiction over each Defendant because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over them to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

5.     This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*

2

6.      The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

7.      Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2) because Defendants are located in and conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the unlawful actions set forth herein).

8.      The Court may maintain supplemental jurisdiction over Plaintiff's state law claims against Defendant Wade Goldstein because, pursuant to 28 U.S.C. § 1367(a): (i) its original jurisdiction in this case is based upon 28 U.S.C. § 1331 as opposed to 28 U.S.C. § 1332; (ii) the claims against Defendant Wade Goldstein are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy; (iii) the claims against Defendant Wade Goldstein do not involve novel or complex issues of state law; (iii) the claims against Defendant Wade Goldstein do not predominate over the claims over which the Court has original jurisdiction; and (iv) there is no other compelling reason to decline jurisdiction over the claims against Defendant Wade Goldstein.

## PARTIES

9.      All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

10.      Plaintiff, Susan Wilton M.D. ("Plaintiff"), is an adult individual residing at the above address.

11.     Defendant, Ophthalmology Physicians and Surgeons P.C. (hereinafter "Physicians and Surgeons P.C."), is a Professional Corporation incorporated pursuant to the laws of the Commonwealth of Pennsylvania and with a place of business at the above captioned address.

12.     Defendant, Francis J. Clark M.D. (hereinafter "Defendant Clark"), is, on information and belief the Principal and majority shareholder of Defendant Ophthalmology Physicians and Surgeons P.C. with a place of business at the above captioned address.

13.     Defendant, Wade Goldstein Landau Abruzzo P.C. (hereinafter "Defendant Wade Goldstein"), is law firm and a Professional Corporation established in accordance with the laws of the Commonwealth of Pennsylvania, with a main office at the address above.

14.     Upon information and belief, each Defendant had knowledge of, committed and permitted the practices and policies complained of herein.

## FACTUAL BACKGROUND

15.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

16.     Plaintiff is a licensed Physician and Ophthalmologist.

17.     Plaintiff was hired as an Associate Ophthalmologist by Defendant Physicians and Surgeons on March 1, 2014 pursuant to an Employment Agreement (hereinafter referred to as 'Exhibit 1' or 'Employment Agreement') which is incorporated herein and attached hereto as Exhibit 1.

18.     The Employment Agreement was signed by Defendant Clark.

19.     The Employment Agreement was drafted by Defendant Wade Goldstein.

20.     At the time the Employment Agreement was drafted, Plaintiff was a client of Defendant Wade Goldstein and had been for a number of years.

4

21.     Defendant Wade Goldstein also represented Defendant Clark and Defendant Ophthalmology Physicians and Surgeons and, with their verbal consent, provided both with legal services.

22.     Defendant Wade Goldstein never sent a waiver of conflict letter to Plaintiff disclosing the issue of a potential conflict in the event there was a disagreement or dispute between the two of its clients who were parties to the Employment Agreement.

23.     In May 2009, Plaintiff's will was drawn up by attorney Robert Wade, a named partner of Defendant Wade Goldstein.

24.     In February 2015, Robert Wade, on instructions from Plaintiff, amended her will.

25.     Plaintiff was invoiced for the services of Defendant Wade Goldstein and paid her bill in full.

26.     Defendant Wade Goldstein began its representation of Plaintiff in 2005 and was retained to perform legal services on behalf of Plaintiff every year from 2006 through 2015 inclusive.

27.     In fact, it was at the suggestion and recommendation of Defendant Wade Goldstein that Plaintiff first met Defendant Clark, who was also a client of Wade Goldstein.

28.     Defendant Wade Goldstein first suggested to Plaintiff that Defendant Clark might be interested in purchasing Plaintiff's medical practice since he had bought many such practices over the years.

29.     Defendant Clark later did agree to purchase Plaintiff's medical practice and hired Defendant Physicians and Surgeons hired Defendant Wade Goldstein to draft the Sale agreement.

30.     The Agreement of Sale was also drafted by Wade Goldstein, who, with their verbalk consent, represented both Plaintiff and Defendants Clark and Physicians and Surgeons in this transaction.

31.     Defendants Clark and Physicians and Surgeons P.C., in late 2015 or early 2016, using to Plaintiff's detriment, confidential information derived from her law firm, Defendant Wade Goldstein, made a tactical decision to try to extract more money from Plaintiff by strong-arming her into signing a new, highly detrimental employment agreement.

32.     Defendants Clark and Physicians and Surgeons P.C., hired a 'consulting firm', Nancy Shipley & Associates, LLC.

33.      On January 18, 2016, without warning and without introduction, Plaintiff received an email from Rhonda Tipton (hereinafter referred to as 'Tipton').

34.     Tipton stated, in that email, that she and Shipley wish to meet with Plaintiff regarding her compensation from Defendant Physicians and Surgeons P.C.

35.      The next day (January 19, 2016) Plaintiff returned the email to Tipton stating she would get back to her regarding a possible conference time.

36.     Tipton responded Plaintiff by text stating she and Shipley had reconciled Plaintiff's 2015 compensation from Defendant Physicians and Surgeons P.C., and wanted to speak to her.

37.     Later that night, Plaintiff texted Tipton stating that she had spoken to Defendant Clark, that the two of them had agreed to meet together first and that Plaintiff would be pleased to contact Tipton after that meeting had occurred.

38.     On January 21, 2016, Plaintiff received a letter, attached hereto and incorporated herein as Exhibit 2, allegedly reconciling Plaintiff's actual net collections at 40% (in accordance with

the Employment Agreement) against the payments received from Defendant Physicians and Surgeons, PC.

39.     The letter alleged that Plaintiff had been overpaid by Defendant Physicians and Surgeons, PC by the sum of $79,609.88.

40.     The letter further discussed 'payback options' for the money Plaintiff was accused of owing.

41.     The letter further stated that Defendant Clark did not wish to discuss with Plaintiff 'compensation or business issues.'

42.     The letter was signed by Shipley, now apparently acting as CEO of Defendant Physicians and Surgeons, P.C. but also in her capacity as President and Consultant at Nancy Shipley & and Associates LLC.

43.     The next day, January 22, 2016, Shipley reiterated, via email, that Defendant Clark would neither discuss nor meet with Plaintiff to 'discuss her salary, compensation or business issues.'

44.     Shipley stated it was 'vital' that Plaintiff, Tipton and Shipley discuss Plaintiff's salary and compensation per Plaintiff's Employment Agreement.

45.     Plaintiff responded that she would be available for a conference on February 5, 2016.

46.     On January 28, 2016, Plaintiff received an email from Tipton stating that she, Tipton, had discovered 'a discrepancy with the reporting' and Plaintiff now owed Defendant Physicians and Surgeons, P.C., the sum of $42,505.11, instead of the $79,609 previously demanded.

47.     In distress, by virtue of the sudden and adversarial attitude of Defendant Clark and Defendant Physicians and Surgeons, PC., Plaintiff reached out to her long time law firm of Wade Goldstein and confided in her attorney of long-standing, Mark Abruzzo Esquire., (Abruzzo) informing him how upset she was and how she wanted to avoid litigation and settle the matter

with Defendant Clark and Defendant Physicians and Surgeons, P.C., even if that meant she would lose money.

48.    Abruzzo now told her, for the first time, that he would not represent her because he and his law firm had a conflict.

49.    Abruzzo referred her instead to Dan Bernick Esquire (Bernick) at Health Care Law Associates, P.C.

50.    Plaintiff then informed Tipton and Shipley that her new counsel would be on the conference call scheduled for February 5, 2016.

51.    On February 5, 2016, Plaintiff was present with Bernick in his office while Brenda Laigaie Esquire (Laigaie), an attorney from Defendant Wade Goldstein, represented Defendant Clark and Defendant Physicians and Surgeons, P.C.,

52.    The purpose for the conference call was for Defendant Clark and Defendant Physicians and Surgeons, P.C., to defend their premise that Plaintiff was overpaid for 2015 and to schedule an immediate reduction of the monies allegedly owed.

53.    Bernick and Plaintiff opposed any retroactive deduction of any monies paid to Plaintiff

54.    Tipton also proposed changes to the Employment Agreement, as did Plaintiff in that meeting and  through Bernick later that day via email.

55.    The email was a continuation of the discussion between the parties which had occurred earlier that day February 5, 2016

56.    Within 72 hours, Plaintiff discovered that her pay check had been unilaterally reduced by Defendants Clark and Physicians and Surgeons.

57.    On February 9, 2016, Bernick sent an email to Laigaie, hereto attached and incorporated herein as Exhibit 3, notifying her that Plaintiff's pay had been reduced by more than half.

58.     Bernick stated further, that Defendant Physicians and Surgeons should be neither seeking payment of a $42,525 nor deducting it from Plaintiff because these monies were not owed.

59.     On February 12, 2016, Bernick received a proposed amended Employment Agreement (Amended Agreement) from Defendant Physicians and Surgeons.

60.     This Amended Agreement was entirely prejudicial to Plaintiff and, as such, was rejected by her.

61.     On April 5, 2016, Plaintiff received a phone call from Tipton threatening to terminate Plaintiff from her employment unless Plaintiff signed the previously-rejected Amended Agreement by 5 PM the next day, April 6, 2016.

62.     The next day Plaintiff texted Defendant Clark to inform him of the ultimatum given to her by Tipton.

63.     Defendant Clark responded by texting that Plaintiff should sign the Amended Agreement and have Bernick communicate with Laigaie.

64.     On April 7, 2016 at 10:43 AM, Plaintiff received an email from Tipton stating that her employment was terminated.

65.     She also received a termination letter in the mail (attached and incorporated hereto as Exhibit 4).

66.     The Termination Letter recommended that Plaintiff's departure be maintained as 'confidential' until an announcement in July 2016.

67.     On April 7, 2016, Plaintiff, still wishing to believe that Defendant Clark and Defendant Physicians and Surgeons were acting in good faith and still believing that matters could be resolved, suggested a face-to-face meeting with Laigaie, Bernick and Defendant Clark.

68.     Plaintiff notified Defendant Clark later that evening by text that she had been terminated by Tipton.

69.     On April 14, 2016 Plaintiff again communicated with Defendant Clark to notify him that her paycheck/draw had been further reduced even after Plaintiff's hours had been extended and the number of patients she saw each day increased.

70.     By April 21, 2016, Plaintiff and Defendant Clark had texted numerous times and Defendant Clark had indicated a desire to try to work things out by meeting with him, Laigaie and Bernick.

71.     In the interim, on April 25, 2016, Plaintiff specifically requested from Tipton the First Quarter 2016 collections data.

72.     The meeting between Laigaie, Bernick, Plaintiff and Defendant Clark occurred on April 28, 2016 at the law offices of Defendant Wade Goldstein.

73.     No agreement was reached.

74.     Laigaie, asked at the end of the meeting, whether it was worth it for Defendant Clark to pay for the expense for Laigaie to draft a preliminary new agreement changing the Employment Agreement.

75.     Bernick and Plaintiff said "No."

76.     On April 29, 2016, Bernick emailed Laigaie stating "before deciding on whether to move forward with Dr. Clark, [Plaintiff] would like to have her various requests for vacation approval, first-quarter numbers, and to be caught up in terms for the first quarter/reconciliation."

77.     Laigaie responded to Bernick that same day (April 29)  stating that "responses are in the works. I will be in touch."

78.     On May 10, 2016, Plaintiff received an email from Tipton with the first quarter 2016 collections.

79.     On May 20, 2016, Bernick wrote a letter to Laigaie, hereto attached and incorporated herein as Exhibit 5, protesting the fact that she had not received approval for her vacation days, despite having earned them, and once again requesting a reconciliation of money owed to her which had been unilaterally withheld from the paychecks for the First Quarter of 2016.

80.     On June 2, 2016, Bernick emailed Laigaie to let Defendant Physicians and Surgeons that Plaintiff had accepted a new position and to request that this be announced to staff and patients.

81.     On June 4, 2016, Plaintiff received an email from Defendant Clark with a cut and paste excerpt of the non-compete clause from her Employment Agreement.

82.     However, as clearly stated in that Employment Agreement (Exhibit 1), this non-compete clause would only be triggered in the event that Plaintiff voluntarily left her employment.

83.     On June 7, 2016, Bernick emailed Laigaie requesting a response from Defendant Physicians and Surgeons regarding the timing of notification to staff and patients that Plaintiff would be leaving the Practice.

84.     On June 10, 2016, Bernick received an email from an Administrative Assistant at Defendant Wade Goldstein stating that Plaintiff had resigned from Defendant Physicians and Surgeons and that Plaintiff was now in violation of her 'verbal agreement' made with Physicians and Surgeons on April 28, 2016 in Laigaie's office at Defendant Wade Goldstein despite the fact that no agreement was ever reached and that the Employment Agreement could only be modified by a writing and despite the fact that Plaintiff's employment had been terminated.

85.     On June 28, 2016, Bernick received a letter from Connors O'Dell, new counsel for Defendant Physicians and Surgeons. This letter is hereto attached and incorporated herein as Exhibit 6

86.     The letter accused Plaintiff of breaching her Employment Agreement with Physicians and Surgeons and demanded monies never owed by Plaintiff and alleged the existence of a modified employment agreement, which never occurred.

87.     Plaintiff was given an ultimatum of 15 days to resolve these matters before Defendant Physicians and Surgeons pursues 'legal remedies.'

**COUNT I**
**Retaliation for Complaining of Wage Violations**
**Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 et seq.**
*Against All Defendants*

88.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

89.     Each Defendant retaliated against Plaintiff for complaining of wage violations in violation of the FLSA.

90.     Plaintiff has suffered damages as a result of Defendant's conduct.

**COUNT II**
**Pennsylvania Wage Payment and Collection Law**
*Against All Defendants*

91.     All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

92.     The monies owed to Plaintiff, and remaining unpaid, constitute "wages" under the Pennsylvania. WPCL.

93.     Each Defendant's conduct as aforesaid also violated the WPCL.

94.     Plaintiff has suffered damages as a result of Defendant's conduct.

## COUNT III
### Legal Malpractice and Breach of Fiduciary Duty
### Plaintiff v. Defendant Wade, Goldstein, Landau Abruzzo, P.C.

95.     The averments of the foregoing paragraphs are hereby incorporated by reference as if set forth fully herein.

96.     Defendant Wade Goldstein, by virtue of its longstanding legal representation of Plaintiff, had a fiduciary duty, a duty of loyalty, and a duty to duty to utilize the skills and knowledge typically possessed by attorneys at law to ensure Plaintiff's interests were protected in the Employment Agreement and otherwise.

97.     Defendant Wade Goldstein breached the foregoing duties and caused Plaintiffs to incur damages as a result.

98.     Defendant Wade Goldstein acted negligently or recklessly in that, by and through its agents, it:

    a.  failed to advise Plaintiff in a timely manner it had a conflict of interest and represented her despite same;

    b.  represented an adverse party against Plaintiff while simultaneously representing Plaintiff;

    c.  on information and belief, used confidential information learned from Plaintiff to provide an advantage and benefit to an adverse party while representing Plaintiff;

    d.  breached its fiduciary duty to Plaintiff;

    e.  undertook representation adverse to Plaintiff in a matter substantially related to other matters in which it represented Plaintiff (constituting independently actionable conduct in the Commonwealth of Pennsylvania);

    f.  abandoned Plaintiff as a client;

g.  committed other actionable misconduct.

As a direct and proximate result of the foregoing negligence and other misconduct of Defendant, Plaintiff sustained damages.

## COUNT IV
### Accounting
### *Against Defendants Clark and Physicians and Surgeons PC*

99.    All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

100.   Plaintiff requests and is entitled to a full and complete accounting with respect to the patients she saw and the monies she was compensated for the years 2014 through 2016 inclusive.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in his favor and against each Defendant for the following relief:

a.  Relief sought for each Count referenced herein.

b.  Compensatory damages as available as a matter of law.

c.  Injunctive and declaratory relief as available as a matter of law.

d.  Liquidated damages as available as a matter of law.

e.  Punitive damages as available as a matter of law.

f.  Costs, disbursements and attorneys' fees' as available as a matter of law.

g.  Such other and further relief as this Court deems just and proper;

Respectfully submitted,

**KOLMAN ELY, P.C.**

_____
Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

Date: July 12, 2016