IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN WILTON M.D.<br><br>                    Plaintiff,<br><br>         vs.<br><br>OPHTHALMOLOGY PHYSICIANS AND SURGEONS, P.C., FRANCIS J. CLARK M.D. and WADE, GOLDSTEIN, LANDAU, ABRUZZO, P.C.<br><br>                    Defendants. | CIVIL ACTION NO.  16-cv-3784 |

**Baylson, J.**                                                                                          **November 15, 2016**

## MEMORANDUM RE: DEFENDANTS' MOTIONS TO DISMISS

### I.  Introduction

Plaintiff Susan Wilton, M.D. ("Plaintiff") commenced this action on July 12, 2016 against:

(1) Ophthalmology Physicians and Surgeons, P.C. ("OPS") and its president, Francis J. Clark, M.D. ("Clark," and collectively, the "OPS Defendants"), her former employer; and
(2) Wade, Goldstein, Landau, Abruzzo, P.C. ("Wade, Goldstein"), former legal counsel for both Plaintiff and OPS.

Plaintiff's complaint (ECF 1, "Complaint" or "Compl.") contains four Counts:

(1) Retaliation for Complaining of Wage Violations, in violation of the Fair Labor Standard Act ("FLSA"), 29 U.S.C. § 201 *et seq*., against all defendants;
(2) Violation of the Pennsylvania Wage Payment Collection Law ("WPCL"), against all defendants;
(3) Legal Malpractice and Breach of Fiduciary Duty, against Wade, Goldstein; and
(4) Accounting, against the OPS Defendants.

On September 7, 2016, the OPS Defendants moved to dismiss Count One of Plaintiff's

Complaint.  (ECF 17, Defs.' Mot. Dismiss "OPS Defs.' Mot."), to which Plaintiff filed an

opposition on October 5, 2016 (ECF 26, Pl.'s Opp'n to Defs.' Mot. Dismiss "Pl.'s OPS Opp'n"),

1

and the OPS Defendants filed a reply on October 12, 2016 (ECF 27, OPS Defs.' Reply Br. ("OPS Defs.' Reply").

In a separate motion, dated August 25, 2016, defendant Wade, Goldstein separately moved to dismiss the Complaint in its entirety. However, it meaningfully disputes only the sufficiency of the allegations contained in Count Three. (See ECF 16, Wade, Goldstein Mot. Dismiss). Plaintiff filed an opposition to Wade, Goldstein's motion on September 26, 2016 (ECF 24, Pl.'s Opp'n to Wade, Goldstein Mot. Dismiss), and Wade, Goldstein filed a reply on October 3, 2016 (ECF 25, Wade, Goldstein Reply Br.).

For the following reasons, the OPS Defendants' motion with respect to Count One will be **GRANTED,** without prejudice and with leave to amend within fourteen (14) days. Because the dismissal of Count One leaves no basis for this Court to exercise federal jurisdiction over the remaining claims, all remaining claims will be dismissed without prejudice.

## II.     Factual Background and Jurisdiction

The following facts are taken from the Complaint, and are accepted as true for purposes of the pending motions. See Fed. R. Civ. P. 12(b)(6); United States Express Lines, Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). Wade, Goldstein, a Pennsylvania law firm, has had a long-standing professional relationship with both Plaintiff, a licensed physician and ophthalmologist, and OPS, an ophthalmology practice in Pennsylvania. Plaintiff has retained Wade, Goldstein to perform legal services on her behalf "every year from 2006 through 2015 inclusive," including to draft her will in May 2009, and to revise it in February 2015. (Compl. ¶¶ 16, 26).

In part because of its familiarity with both Plaintiff and OPS, Wade, Goldstein suggested to Plaintiff "that [d]efendant Clark might be interested in purchasing Plaintiff's medical

practice[,]" which he eventually did purchase. (Id. ¶¶ 28-29). With each party's verbal consent, Wade, Goldstein represented both Plaintiff and OPS in the drafting and execution of that sale agreement, which was completed on or about February 28, 2014. (Id. ¶¶ 29-30; ECF 17 at 2).

Also on February 28, 2014, Plaintiff entered into an employment agreement with OPS, pursuant to which she became an associate in OPS's ophthalmology practice. (Id. ¶ 17; ECF 1, Ex. 1 "Employment Agreement"). Again, with verbal consent from both parties—but without obtaining a conflict waiver—Wade, Goldstein represented both parties in the drafting and execution of the Employment Agreement. (Id. ¶¶ 19, 22). The Employment Agreement set forth the terms of Plaintiff's compensation, including a "Base Salary" of $250,000 per year, and the circumstances under which that amount could be adjusted. (Employment Agreement at 4-5).

Plaintiff's relationship with OPS began to deteriorate when, beginning on January 18, 2016, Plaintiff became aware that OPS intended to reduce Plaintiff's compensation. (Compl. ¶ 33). From then on, OPS primarily communicated with Plaintiff through OPS's consulting firm, Nancy Shipley & Associates, LLC ("Shipley"). (Id. ¶¶ 32-38; 41-43). According to Plaintiff, Nancy Shipley also functioned "as CEO of [OPS]." (Id. ¶ 42). On January 21, 2016, Plaintiff received a letter from Shipley "alleg[ing] that Plaintiff had been overpaid by [OPS] by the sum of $79,609.88," which Shipley, in a subsequent email, amended to $42,505.11. (Id. ¶¶ 39, 46).

"In distress . . . Plaintiff reached out to her long time law firm of Wade[,] Goldstein and confided" that she wanted to settle the compensation dispute without litigation. (Compl. ¶ 47). Abruzzo, an attorney with Wade, Goldstein, then told her "for the first time, that he would not represent her because he and his law firm had a conflict," and referred her to alternative counsel ("Plaintiff's Counsel"). (Id. ¶¶ 48-49).

3

On February 5, 2016, the OPS Defendants (represented by Wade, Goldstein), Plaintiff (represented by Plaintiff's Counsel), and Shipley met to discuss the compensation dispute, during which Plaintiff rejected certain proposed changes to the Employment Agreement. (Id. ¶¶ 51, 54).

"Within 72 hours" after that meeting, "Plaintiff discovered that her pay check had been unilaterally reduced . . . by more than half." (Id. ¶¶ 56-57).

On February 9, 2016, Plaintiff's Counsel emailed the OPS Defendants' counsel, Wade, Goldstein, complaining about the reduction in her compensation. (See ECF 1, Ex. 3 at 1-2). Specifically, Plaintiff's Counsel requested information regarding OPS's position on "repayment of the $42,525," the "effective date of any reduction in [Plaintiff's] pay below $250,000," and "plans with respect to compensation going forward[.]" (Id.). Plaintiff's Counsel also relayed to Wade, Goldstein Plaintiff's statement that,

> "I have been paid every other week. My paycheck dated 1/7/16 and 1/21/16 were (NET) $5092.42. The paycheck stub I received today dated 2/4/16 was for $2100.15."

(Id.) On February 12, 2016, Plaintiff received from OPS a proposed amended employment agreement ("Amended Agreement"), which she rejected because it was "entirely prejudicial." (Id. ¶¶ 59-60). On April 5, 2016, Shipley called Plaintiff threatening to terminate her employment with OPS unless she signed the Amended Agreement by the following day. When Plaintiff refused, she was terminated on April 7, 2016, and received a termination letter sometime thereafter. (Id. ¶¶ 61-66). Despite some effort to resolve the compensation dispute with the OPS Defendants post-termination, no resolution was ultimately reached. (Id. ¶¶ 67-77). According to Plaintiff, OPS considered Plaintiff's acceptance of new employment to be a breach of a "verbal agreement" with OPS. (Id. ¶¶ 80, 84).

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C § 1441(a).

## III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. While all factual allegations must be accepted as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), this requirement does not apply to legal conclusions, which may be disregarded, Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two-part analysis. First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Second, it should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

To decide a motion to dismiss, courts consider only the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and, where appropriate and necessary, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV. Analysis**

    **a. FLSA Anti-Retaliation Claim (Count One)**

The OPS Defendants move to dismiss Plaintiff's FLSA retaliation claim. Before considering the allegations Plaintiff has made in her Complaint about her salary reduction, the Court must first be able to conclude whether Plaintiff has plausibly alleged she is protected under the FLSA.

Pursuant to 29 U.S.C. § 213(a)(1), employees "employed in a bona fide executive, administrative or professional capacity" are exempt from entitlement to minimum wage and overtime pay. One prerequisite for FLSA exemption is that the employee is considered to be paid on a "salary basis," as defined in 29 CFR § 541.602(a), a regulation authorized by the FLSA.

The FLSA also contains an anti-retaliation provision that makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. See 29 U.S.C. § 215. The FLSA expressly regulates minimum wages and overtime pay. See 29 U.S.C. §§ 206 & 207.

To state a *prima facie* case of retaliatory discrimination under the FLSA, a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action. See Jones v. Amerihealth Caritas, 95 F. Supp. 3d 807, 813 (E.D. Pa. 2015) (internal citations and quotation marks omitted); accord Preobrazhenskaya v. Mercy Hall Infirmary, 71 Fed. App'x. 936, 939 (3d Cir. 2003). Within the meaning of the FLSA, protected activity includes "fil[ing] any complaint or institute[ing] or caus[ing] to be

6

instituted any proceeding under or related to [the FLSA]." Jones, 95 F. Supp. 3d at 814 (citing 29 U.S.C. § 215(a)(3)).

The OPS Defendants argue that Count One should be dismissed because (1) Plaintiff, as a practicing ophthalmologist and physician, is exempt from the protection of the FLSA (OPS Defs.' Mot. at 5-6); and (2) Plaintiff "never explicitly or even implicitly cast[] her salary reduction complaints in the context of the FLSA." (Id. at 7). Instead, they argue, Plaintiff "frame[d] the salary complaint simply in terms of the dollar amount" and "does nothing to suggest that she complained of minimum wage, overtime violation or any other protection afforded by the FLSA." (Id. at 7-8).

Plaintiff's Complaint makes no factual allegations showing she is protected under the FLSA. In her brief, Plaintiff merely argues that "[the OPS] Defendants have not cited to any precedent that indicates an employee must be non-exempt to validly assert a retaliation claim under the FLSA." (Pl.'s OPS Opp'n at 3). Plaintiff also argues that the "protected activity" in which she engaged was "complain[ing] through her attorney" about the fact that "OPS unilaterally began making unlawful deductions from her paycheck." (Id. at 4). This reduction in her paycheck, she argues, could have the "general potential" to convert her from an exempt employee into a non-exempt employee, pursuant to 29 CFR § 541.602(a). (Id.). As a non-exempt employee, she could be "eligible for overtime[.]" (Id.).

Plaintiff has the burden of alleging she is entitled to FLSA protection. If so, then the burden shifts to the OPS Defendants to show she is exempt. See Pignataro v. Port. Auth., 593 F.3d 265, 268 (3d Cir. 2010). The Court cannot determine that Plaintiff is protected under the FLSA based upon arguments she makes in her brief, when she has failed to make sufficient factual allegations in the Complaint. Although the Court is doubtful that the Plaintiff's factual

7

situation could provide jurisdiction under FLSA, the Court will allow Plaintiff to file an Amended Complaint if Plaintiff believes that she can "plausibly" come within FLSA protection.

Moreover, even if Plaintiff had sufficiently alleged that she is protected under the FLSA, her conclusory allegation that "[e]ach Defendant retaliated against Plaintiff for complaining of wage violations in violation of the FLSA" is insufficient to state a claim for FLSA retaliation. (Compl. ¶ 89); see Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The Supreme Court has held that the complaint underlying an FLSA retaliation claim must be sufficiently "related to" rights protected by the FLSA such that a "reasonable, objective person would have understood the employee to have put the employer on notice of an assertion of rights." Kasten v. Saint-Gobain Performance Plastics, 563 U.S. 1, 14 (2011).  Plaintiff's generalized complaint about a salary reduction fails this test, as it is not sufficiently "related to" any assertion of rights protected by the FLSA.  29 U.S.C. § 215(a)(3); (Compl. ¶¶ 56, 57).

Because Count One was the only federal cause of action in this case, the result eliminates the basis upon which this Court may exercise federal subject matter jurisdiction.  Plaintiff's remaining claims arise under Pennsylvania state law, over which this Court may have supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  Subsection (c) of this statutory provision, however, authorizes the Court to decline the exercise of supplemental jurisdiction once it dismisses "all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3). Because the Court can ascertain no circumstances that would justify the exercise of jurisdiction over what is now a purely state law dispute, the Court will exercise its discretion to dismiss Plaintiff's state law claims without prejudice for lack of subject matter jurisdiction.

**V.     Conclusion**

The Defendants' motion with respect to Count One will be **GRANTED,** without prejudice and with leave to amend within fourteen (14) days.  All remaining claims will be dismissed without prejudice.  If no amendment is filed, the dismissal of Count One will be with prejudice.

An appropriate Order follows.

O:\Jessica.2016\16-cv-3784 Wilton v. Ophthalmology Physicians and Surgeons\Memo Re Motion to Dismiss.docx